Argued and submitted December 21, 2000, affirmed June 6, 2001

STATE OF OREGON,
*Respondent,*

*v.*

SAM PRESTON COCKRELL,
*Appellant.*

C983701CR; A106137

26 P3d 169

Andy Simrin, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Public Defender.

Jennifer Scott Lloyd, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

EDMONDS, P. J.

**EDMONDS, P. J.**

Defendant appeals from a conviction for one count of sexual abuse in the first degree, ORS 163.427. He assigns error to the trial court's admission of evidence of two prior incidents of sexual misconduct that occurred in 1992 and that involved two adolescent girls other than the victim in this case. We affirm.

Defendant was charged with two counts of sexual abuse in the first degree. In count 1, the state alleged that in late November or early December 1997, defendant entered a spare bedroom at his wife's parents' home where his niece, J.C., and two nephews were watching videos, and began to roughhouse with the children. Defendant picked up J.C., who was 11 years old at the time, from a bed and held her up in the air. She testified that while she was being held aloft, defendant rubbed her crotch area repeatedly. She said that the rubbing was persistent and deliberate and that it lasted for several seconds. Defendant then put her back down onto the bed. The two younger boys in the room were aware of defendant's presence but did not observe the nature of the touching. Defendant left the room, and the children continued to watch television. J.C. did not tell her parents or anyone else about what had happened until several months later, when she finally disclosed the incident to her mother in writing.

In count 2, the state alleged that, in an incident separate from the allegations in count 1, defendant sat down near J.C. while she was playing the piano. He placed his hand on her upper thigh near the top of her leg for approximately 5 minutes. J.C. continued to play the piano at defendant's request. She testified that defendant's hand became sweaty and that several times he moved his hand while it was on her leg. Because J.C. felt uncomfortable with defendant's behavior, she told him that she was thirsty, and she left the room to get away from him.

When J.C. disclosed the incident alleged in count one to her parents, they confronted defendant before they contacted the police. Defendant admitted to them and to his employer that he had touched J.C. "inappropriately." He

wrote letters of apology to J.C., to her parents, and to her grandparents, in whose home the contacts had occurred. Ultimately, J.C.'s parents contacted the police, who investigated the incidents. As the investigation progressed, defendant qualified his admissions by explaining that, while he meant to say that the touching was inappropriate in light of his prior sexual misconduct and the counseling he had received as a result of the conviction arising out of that misconduct, his contact with J.C. was not sexual in nature.

Defendant was charged under ORS 163.427, which provides, in part:

"A person commits the crime of sexual abuse in the first degree when that person:

"(a)  Subjects another person to sexual contact and:

"(A)  The victim is less than 14 years of age[.]"

"Sexual contact" is defined by ORS 163.305(6) as:

"any touching of the sexual or other intimate parts of a person or causing such a person to touch the sexual or intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party."

Thus, the state was required to show at trial that the touching of J.C.'s genitals and thigh[1] occurred for the purpose of arousing or gratifying the sexual desire of defendant or J.C.

Before trial, the state notified defendant that it intended to introduce evidence of his prior conviction for sexual abuse in the first degree arising out of the prior misconduct and to use the facts surrounding the prior misconduct to bolster its case that defendant acted for purposes of sexual gratification when he touched J.C. Defendant moved to exclude the evidence. The court held a pretrial hearing on the

---

[1] In *State v. Woodley*, 306 Or 458, 463, 760 P2d 884 (1988), a case that involved an allegation that the defendant touched the victim's thigh, the Supreme Court said,

"the part [of the body which is touched] must be subjectively intimate to the person touched, and either known by the accused to be so or to be an area of the anatomy that would be objectively known to be intimate by any reasonable person."

admissibility of the evidence and heard summaries about the prior incidents from counsel.

Counsel informed the court that the prior incidents occurred in 1992 in Roseburg and that the incidents resulting in defendant's prior conviction involved a 12-year-old girl, K.S. At the time, defendant was dating or engaged to K.S.'s mother and was living at her residence. Defendant entered the bedroom of K.S. while she was sleeping, put his hand under her shirt, touched her breasts, moved his hand down inside her shorts, and penetrated her vagina with his fingers. In a second incident, defendant engaged in the same sort of touching while he and K.S. sat on a couch watching television.

Defendant also was charged with sexual misconduct involving J.G., another 11- or 12-year-old girl, who was a frequent overnight guest in the home shared by K.S., her mother and defendant. During one of J.G.'s overnight stays in K.S.'s home, defendant approached her while she was sleeping on the floor near K.S. He allegedly reached up under her shirt and touched her breasts through her bra. J.G. awoke, told defendant to stop, and pulled her shirt down. Defendant then left the room. Defendant's conduct was investigated by a Roseburg detective, Officer Miller. Defendant admitted to Miller that he had touched both girls and that his touching was for a sexual purpose, although he denied touching J.G.'s breasts. He pleaded guilty to the charge involving K.S., and the charge involving J.G. was dismissed. Defendant then underwent sex offender treatment as part of his criminal sentence.

In ruling on defendant's motions, the trial court first inquired as to the purpose for which the evidence was being offered. The state explained that it was to prove that defendant had a sexual purpose for touching J.C. The trial court then confirmed with defendant's counsel that defendant intended to dispute that he had a sexual purpose when he touched J.C. Because defendant denied that he had a sexual purpose in touching J.C., the court concluded that the evidence could be relevant to a fact in controversy. It then undertook the analysis for the admissibility of prior bad acts evidence required by *State v. Johns*, 301 Or 535, 725 P2d 312

(1986), and concluded that the prior incidents were similar enough in nature to be probative on the issue of intent. It then weighed the prejudicial effect of the evidence against the state's need for it, and ruled provisionally that

> "[w]ith regard to these alleged prior acts, the touching of the fiancé's daughter, digital penetration, the touching in that case seems to be evidence that the court would admit fairly clearly, I believe, touching upon the defendant's intent or purpose in any touching that may have occurred in this case. It's more of a stretch when we're talking about the alleged breast fondling of the friend of that first victim for a number of reasons. * * * I can't rule on the admissibility of that latter one at this point. It's in limbo. But seems to me clear, and I will make a preliminary ruling, with regard to the admissibility of the fondling of the girl he has been convicted of sexual abuse, and that has to do with the daughter of his fiancé, I believe it's been termed, and so because I think that is evidence that the jury may use to infer intent or purpose of any acts committed in this case."

At the beginning of the second day of trial, the prosecutor asked the court to make a final ruling on the admissibility of the proffered evidence. The court ruled that the evidence was admissible on the limited issue of whether defendant had the purpose of sexual gratification when he touched J.C.[2] Officer Miller and J.G., then age 18, testified about the prior incidents. J.C. and defendant also testified. Defendant told the jury that any touching of J.C. as alleged in count 1 was incidental to the roughhousing that they were engaged in and was not for his sexual gratification, and that

---

[2] At that point in the trial, the court said,

"My belief is, under the present state of the law, that the evidence offered by the state here is admissible for the purpose they have announced that it's being admitted for and that is as evidence bearing upon the purpose for which thigh touching occurred. I'm also aware of the risks that are inherent in the use of that sort of evidence. And it will be my plan to instruct the jury fairly, I hope effectively, on what they may use that evidence for and what they may not use it for. So that's the decision I have reached."

There is some indication from that comment that the court intended to limit the admissibility of the evidence to count 2. However, the remainder of the record and the court's apparent adoption of its pretrial ruling making the evidence admissible "to infer intent or purpose of *any acts* committed in this case," lead us to infer that the evidence was admitted as to both counts. We also note that the court appeared initially to have doubts about admitting the evidence regarding J.G. but that it also resolved that question in favor of admissibility.

any touching as alleged in count 2 was not as J.C. had described. The jury ultimately found defendant guilty of count one but not guilty of count two.[3]

■       Defendant argues on appeal that the evidence of the prior sexual misconduct is nothing more than propensity evidence prohibited by OEC 404(3)[4] and that it resulted in a conviction based solely on the inference that he is a bad person who sexually abuses young girls. The state contends that defendant's prior conduct was relevant to establish his intent to obtain sexual gratification when he touched J.C.'s crotch area while roughhousing.

Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. Because of the elements of the crime of sexual abuse in the first degree, one fact of consequence is whether defendant had the intent to arouse or gratify himself sexually by engaging in the touching during the roughhousing. Our first task, then, is to ascertain whether the trial court correctly concluded that the evidence was relevant to the issue regarding defendant's purpose in touching J.C.

■       Under *Johns* we inquire as to the similarity of the prior conduct to the conduct alleged to determine the relevance, if any, of Miller's and J.G.'s testimony. We determine whether there is a strong enough correlation between two

---

[3] In the transcript, there is an indication that the trial court offered to give a specially drafted jury instruction that would have limited the purposes for which the jury could have used the evidence of the prior incidents. Despite an indication that the court intended to include the instruction in the record, we cannot find such an instruction in the record. The transcript reflects that, after a discussion in chambers, defendant asked that the specially drafted instruction not be given. However, we do not know what the instruction said. Because we cannot ascertain from the record what the nature of the instruction was that defendant declined, we cannot determine whether he invited the error of which he now complains.

[4] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

unrelated events to allow inferences to be drawn from one to the other. To perform the *Johns* analysis, we ask:

"(1) Does the present charged act require proof of intent? (2) Did the prior act require intent? (3) Was the victim in the prior act the same victim or in the same class as the victim in the present case? (4) Was the type of prior act the same or similar to the acts involved in the charged crime? (5) Were the physical elements of the prior act and the present act similar?" *Johns*, 301 Or at 555-56.

The answer to the first two questions is in the affirmative. The offense of sexual abuse requires proof of "sexual contact," which in turn requires a touching of an intimate or sexual body part for the purpose of gratifying the sexual desire of either party, and the act of sexual abuse allegedly occurred in all three incidents. Regarding the third, fourth, and fifth questions, defendant argues that, as in *State v. Sheets*, 160 Or App 326, 981 P2d 815 (1999), the "specific circumstances surrounding defendant's intent and the abuse of the victim in this case differ from the circumstances regarding the [former victim]." *Sheets*, 160 Or App at 331. Specifically, defendant argues that, although the victims of his conduct were all of the same age, J.C. "did not have the same relationship to defendant as the girls with whom he engaged in his prior misconduct." He also contends that there was no roughhousing involved in his prior conduct, so that "the similarities between the offenses and prior misconduct in this case are just as superficial as the similarities were in *Sheets*."

As an initial matter, we disagree with defendant that his prior misconduct differs greatly from the conduct charged. The victims in the prior incidents were about the same age, between 11 and 12 years old, and were all female. Each touching occurred while the victims were involved in nonsexual activities. The surrounding physical circumstances of the incidents are also similar. There were no alcohol, drugs, violence, coercion or the use of weapons involved in any of the incidents. The types of touching involved are similar—in each case, defendant used his hand to touch the sexual or intimate parts of the victims. Finally, there is the similarity in each of defendant's responses after being confronted about his conduct. Thus, although there are some dissimilarities between the former incidents and this case, in

that defendant did talk to J.C. casually during the incident, touched her through her clothing rather than underneath it, and was engaged in roughhousing with her when the touching occurred, these differences are not "so great that they overwhelm the similarities." *State v. Pratt*, 309 Or 205, 214, 785 P2d 350 (1990). Defendant's argument that there are no more similarities between the prior misconduct and the misconduct charged in this case than there were in *Sheets*, is an attempt to match facts in a way that is not controlling of this kind of issue. As the court said in *Pratt*, what constitutes a significant similarity that will justify the admission of evidence of prior bad acts must necessarily be decided on a case-by-case basis. *Pratt*, 309 Or at 214.

Ultimately the analysis must focus on the purpose for which the evidence of prior bad acts is offered. In *Sheets*, the charges included the alleged rape, sodomy and sexual abuse of a five-year-old victim. The state alleged that the defendant "intentionally" raped the child and "knowingly" engaged in deviate sexual activity and sexual abuse. The victim was a child in the defendant's care, who reported that the defendant took her to her parents' bedroom and that he "tried to put his crotch into her crotch" while bouncing her on his stomach on the bed. *Sheets*, 160 Or App at 329. The state's other misconduct evidence was evidence that the defendant had previously sexually abused an 11-year-old child by "making out" with her and then attempting to have sexual intercourse with her.

At the pretrial hearing in *Sheets*, the state anticipated that the defendant's defense would be that the event never occurred, or, alternatively, that the "belly-bouncing" occurred while the defendant was playing with the child and not because the defendant sought to gratify his sexual desires. The state offered the evidence for the purpose of rebutting those potential defenses. In our view, the evidence of the previous sexual abuse of the 11-year-old child had no tendency to make it more likely that the occurrence involving the five-year-old child did take place. All that the evidence demonstrated was that defendant had a propensity to engage in sexual misconduct with minor females. As to the issue of whether the evidence was relevant to rebut the defense that the defendant was playing with the five-year-old victim, our

analysis was slightly different. We found that, because the defendant had a sexual purpose in touching the 11-year-old victim, that evidence was potentially relevant to the issue of his intent with the 5-year-old child. We concluded, however, that the defendant's conduct was not similar enough under a *Johns* analysis to reasonably infer from the conduct with the 11-year-old victim that he intentionally raped the five-year-old victim and knowingly engaged in deviate sexual activity and sexual abuse with her. *Id.* at 331.

This case differs from *Sheets* because of the purposes for which the evidence of the Roseburg incidents was offered and because of the similarities between those incidents and the crime charged. In summary, we agree with the trial court that the proffered evidence tended to show that when defendant touched young females on intimate or sexual parts of the bodies, he had a sexual purpose. That was a permissible reason for admitting the evidence. Thus, the evidence was relevant to prove defendant's sexual purpose in touching J.C.

Affirmed.